[Civil No. 859.   Filed October 29, 1904.]

[78 Pac. 367.]

MARTIN BUGGELN, Plaintiff, v. E. M. DOE, as District Attorney of County of Coconino, Territory of Arizona, Defendant.

1. MANDAMUS—PETITION—SUFFICIENCY—QUO WARRANTO.— Since it is only mandatory upon the district attorney to institute *quo warranto* proceedings "when he has reason to believe that an office or franchise is being usurped, intruded into, or unlawfully held or exercised," a petition for. *mandamus* to require the district attorney to

IX Ariz.—6

institute such proceedings must allege facts to clearly show that his refusal has been an arbitrary act and not a mistake of judgment.

KENT, C. J., dissenting.

ORIGINAL APPLICATION for Writ of Mandamus.

The facts are stated in the opinion.

T. J. Norton, and U. T. Clotfelter, for Petitioner.

The demurrer to the petition should be overruled because: 1. Upon the facts alleged a positive duty was imposed upon defendant which he failed to discharge; and 2. Even if a positive duty was not imposed, still defendant was guilty of such an abuse of discretion that this court can properly direct the issuance of the writ prayed.

*Upon the facts alleged a positive duty was imposed upon defendant which he failed to discharge.*

Defendant's argument in support of his demurrer to the petition is that by virtue of the terms of section 3794 of the Revised Statutes of Arizona he is clothed with the right to exercise a discretion and a quasi-judicial function; that in refusing to institute the proceeding requested by plaintiff he (defendant) has acted, and therefore this court has no right to issue a writ of mandate to compel him to exercise such discretion and judicial function in a manner other than he has exercised it.

*Defendant had neither the right to exercise a discretion nor a judicial function.*

If, upon the facts stated in the petition, a *duty* was imposed upon defendant by virtue of the terms of section 3794 of the Revised Statutes of Arizona, it follows as a proposition of law that defendant's assumption, that in refusing to institute *quo warranto* proceedings he exercised a discretion and a quasi-judicial function, is erroneous. Being erroneous, his whole argument must fail.

"An action may be brought by the district attorney, in the name of the territory, upon his own information or upon the verified complaint of any person, in the district

court sitting for the county for which he is district attorney, against any person who usurps, intrudes into, or who unlawfully holds or exercises any public office or any franchise within said county; and it is his duty to bring the action whenever he has reason to believe that any such office or franchise is being usurped, intruded into or unlawfully held or exercised: Provided, that any person claiming such office or franchise may bring such action in his own name by first applying for and obtaining his leave of said court so to do: And provided, further, that if the office be a territorial office, the attorney-general of the territory shall have like power herein vested in district attorneys.'' Rev. Stats. Ariz. 1901, sec. 3794.
*"May" in this section means "must."*

In the case of *Mason* v. *Fearson,* 9 How. 248, 13 L. Ed. 125, 130, it is said: ''The only plausible argument which remains to be considered against the design to make this power to sell only enough to pay all the taxes mandatory, as it had before been construed by this court, rests on the supposed incorrectness of the general rule of construction, as applied to the facts here, which holds the expression 'may' sell, or 'it is lawful' to sell, in a particular way, to be imperative. But if we look to the true test of the principle involved in the question, no great doubt can remain. This general rule may seldom be correct, in a popular sense, as to such words when used in contracts and private affairs. But under the circumstances existing here, it is founded on sound principles and numerous precedents. The form of expression adopted here, it must be remembered, is employed in laws, and not in contracts, and of course, if a well-established construction had been before given to it in laws by the courts under certain circumstances, it must be presumed to have been well known, and intended here under like circumstances. What are these circumstances? Whenever it is provided that a corporation or officer 'may' act in a certain way, or it 'shall be lawful' for them to act in a certain way, it may be insisted on as a duty for them to act so, if the matter, as here, is devolved on a public officer, and relates to the public or third persons. Thus, in *Rex and Regina* v. *Barlow,* (2 Salk. 609), 'Where a statute directs the doing of a thing for the sake of

justice or the public good, the word "may" is the same as the word 'shall'; thus 23 Hen. VI says the sheriff *may* take bail; this is construed he *shall*, for he is compellable so to do.' (Carth. 293.)   On this, see further *The King* v. *The Inhabitants of Derby*, Skin. 370; *Blackwell's case*, 1 Vern. 152-154; 2 Chit. 251; Dwarris on Statutes, 712; *Newburg T. Co.* v. *Miller*, 5 Johns. Ch. 113, 9 Am. Dec. 274; *City of New York* v. *Furze*, 3 Hill, 612, 614; *Minor* v. *The Mechanics' Bank*, 1 Pet. 64, 7 L. Ed. 47.   Without going into more details, these cases fully sustain the doctrine, that what a public corporation or officer is empowered to do for others, and it is beneficial to them to have done, the law holds he ought to do.   The power is conferred for their benefit, not his; and the intent of the legislature, which is the test in these cases, seems under such circumstances to have been 'to impose a positive and absolute duty.' "

In the case of *Board of Supervisors* v. *United States ex rel. State Bank*, 4 Wall. 435, 18 L. Ed. 419, 422, 423, the court said: "The important question in the case is, whether the respondents are compellable to levy and collect, by taxation, the amount specified in the order of the court below.   The writ if issued, must conform to the order.   The court below proceeded upon the act of February 16th, 1863.   We have not found it necessary to consider any of the other acts referred to in the briefs.   That act declares that 'the board of supervisors under township organization, in such counties as may be owing debts which their current revenue, under existing laws, is not sufficient to pay, may, if deemed advisable, levy a special tax, not to exceed in any one year one per cent upon the taxable property of any such county, to be assessed and collected in the same manner and at the same time and rate of compensation as other county taxes, and when collected to be kept as a separate fund, in the county treasury, and to be expended under the direction of the said county court or board of supervisors, as the case may be, in liquidation of such indebtedness.'   The counsel for the respondent insists, with zeal and ability, that the authority thus given involves no duty; that it depends for its exercise wholly upon the judgment of the supervisors; and that judicial action cannot control the discretion with which the statute has clothed them. We cannot concur in this view of the subject.   Great stress

is laid by the learned counsel upon the language, 'may, if deemed advisable,' which accompanies the grant of power, and, as he contends, qualifies it to the extent assumed in his argument. In *King* v. *Inhab. of Derby,* Skin. 370, there was an indictment against 'divers inhabitants' for refusing to meet and make a rate to pay 'the constables' tax.' The defendants moved to quash the indictment, 'because they are not compellable, but the statute only says that they may, so that they have their election, and no coercion shall be." The court held that 'may,' in the case of a public officer, is tantamount to 'shall,' and if he does not do it, he shall be punished upon an information, and though he may be commanded by a writ, this is but an aggravation of his contempt. In *Rex and Regina* v. *Barlow,* 2 Salk. 609, there was an indictment upon the same statute, and the same objection was taken. The court said: 'When a statute directs the doing of a thing for the sake of justice or the public good, the word *may* is the same as the word *shall:* thus, 23 Hen. VI says "the sheriff may take bail." This is construed he shall, for he is compellable to do so.' These are the earliest and the leading cases upon the subject. They have been followed in numerous English and American adjudications. The rule they lay down is the settled law of both countries. In *Mayor of New York* v. *Furze,* 3 Hill, 614, and in *Mason* v. *Fearson,* 9 How. 248, 13 L. Ed. 125, the words 'it shall be lawful' were held also to be mandatory. See *Attorney General* v. *Lock,* 3 Atk. 164; *Blackwell's case,* 1 Vern. 152; Dwarris on Statutes, 712; *Malcolm* v. *Rogers,* 5 Cow. 188, 15 Am. Dec. 464; *Newburg T. Co.* v. *Miller,* 5 Johns. Ch. 113, 9 Am. Dec. 274; *Js. of Clark Co. Ct.* v. *T. Co.,* 11 B. Mon. 143; *Minor* v. *Mech. Bank,* 1 Pet 64, 7 L. Ed. 47; *Com.* v. *Johnson,* 2 Binn. 275; *Virginia* v. *Justices,* 2 Va. Cas. 9; *State* v. *Chase,* 5 Ohio St. 528; *Coy* v. *Lyons,* 17 Iowa, 1, 85 Am. Dec. 539. The conclusion to be deduced from the authorities is, that where power is given to public officers, in the language of the act before us, or in equivalent language—whenever the public interest or individual rights call for its exercise—the language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given, not for their benefit, but for his. It is placed with the depositary to meet the demands of right, and to prevent a failure of jus-

tice. It is given as a remedy to those entitled to invoke its aid, and who would otherwise be remediless. In all such cases it is held that the intent of the legislature, which is the test, was not to devolve a mere discretion, but to impose 'a positive and absolute duty.' The line which separates this class of cases from those which involve the exercise of a discretion, judicial in its nature, which courts cannot control, is too obvious to require the latter category. *People* v. *Superior Court*, 5 Wend. 125; s. c. 10 Wend. 289; *People v. Vermilyea*, 7 Cow. 398; *Hull* v. *Supervisors*, 19 Johns. 260, 10 Am. Dec. 223. The circuit court properly awarded a peremptory writ of *mandamus*. We find no error in the record. The judgment below is affirmed."

In the case of *City of Galena* v. *United States ex rel. Henry Amy*, 5 Wall. 705, 18 L. Ed. 560, 561, 562, the court said: "The fourth section of the act of 1852 declares that the city council, if they believe the public good and the best interests of the city require it, may levy and collect an annual tax of not exceeding one per cent and that the amount thus collected shall be kept separate; and that annually, on the 1st of January, it shall be paid over *pro rata* upon the funded debt of the city, that may be presented by the holders; and that this section shall continue in force until the principal and interest of the indebtedness is fully paid. This power has not been exercised by the city authorities, and they have made no other provision for liquidating the debts due to the relator. They have no other means of payment, in possession or prospect. Under such circumstances, the discretion thus given cannot, consistently with the rules of law, be resolved in the negative. The rights of the creditor and the ends of justice demand that it should be exercised in favor of affirmative action, and the law requires it. In such cases the power is in the nature of a trust for his benefit, and it was the plain duty of the court below to give him the remedy, for which he asked, by awarding a peremptory writ to compel the imposition of the tax, as was done. These principles were fully considered in *Supervisors* v. *United States*, 4 Wall. 435, 18 L. Ed. 419, . . . and it is sufficient to refer to that case for a fuller exposition of our views upon the subject. The return of the respondents showed no sufficient reason why a peremptory writ of *mandamus* should not issue, as was ordered."

In the case of *United States ex rel. Seigel* v. *Thoman,* 156 U. S. 319, 39 L. Ed. 450, 452, 15 Sup. Ct. 378, it is said: "It is a familiar doctrine that where a statute confers a power to be exercised for the benefit of the public or of a private person, the word 'may' is often treated as imposing a duty rather than conferring a discretion. *Mason* v. *Fearson,* 50 U. S. (9 How.) 248, 13 L. Ed. 125; *Washington* v. *Pratt,* 21 U. S. (8 Wheat.) 687, 5 L. Ed. 716; *Rock Island County Suprs.* v. *United States,* 71 U. S. (4 Wall.) 435, 18 L. Ed. 419. This rule of construction is, however, by no means invariable. Its application depends on the context of the statute, and on whether it is fairly to be presumed that it was the intention of the legislature to confer a discretionary power or to impose an imperative duty. *Minor* v. *Mechanics' Bank of Alexandria,* 26 U. S. (1 Pet.) 46, 7 L. Ed. 47; *Binney* v. *Chesapeake etc. Canal Co.,* 33 U. S. (8 Pet.) 201, 8 L. Ed. 917; *Thompson* v. *Roe,* 63 U. S. (22 How.) 422, 16 L. Ed. 387. In *Minor* v. *Mechanics' Bank of Alexandria,* Mr. Justice Story, delivering the opinion of the court, said: 'The argument of the defendants is that "may" in this section means "must"; and reliance is placed upon a well-known rule, in the construction of public statutes, where the word "may" is often construed as imperative. Without question such a construction is proper in all cases where the legislature means to impose a positive and absolute duty, and not merely to give a discretionary power. But no general rule can be laid down upon this subject, further than that that exposition ought to be adopted in this as in other cases, which carries into effect the true intent and object of the legislature in the enactment. The ordinary meaning of the language must be presumed to be intended unless it would manifestly defeat the object of the provisions.' In *Thompson v. Roe, supra,* this court, speaking through Mr. Justice Grier, observed: 'It is only where it is necessary to give effect to the clear policy and intention of the legislature that such a liberty can be taken with the plain words of the statute.' "

In the case of *Ralston* v. *Crittenden,* 13 Fed. 508, 512, 3 McCrary, 344, it is said: "In substance it is claimed that in so far as the rights of complainants are concerned the state officers were at liberty to disregard the act. In this view I do not concur. Even if the terms of the statute were

permissive only, and meant no more than the words generally employed in statutes importing a grant of authority or power to a public officer to do a certain act, still it is well settled that all such acts are to be construed as mandatory, whenever the public interests *or individual rights* call for the exercise of the power conferred. *Supervisors* v. *United States,* 4 Wall. 435, 18 L. Ed. 419; *Galena* v. *Amy,* 5 Wall. 705, 18 L. Ed. 560; *McDougal* v. *Peterson,* 11 C. B. 755; 15 Op. Atty.-Gen. U. S. 621.''

In the case of *National Bank* v. *City of St. Joseph,* 31 Fed. 216, 217, 24 Blatchf. 436, the court, after quoting the statute involved, said: ''The proposition seems almost too plain to require discussion that it is the intention of section 3, evinced in plain and explicit language, to empower the mayor and councilmen to call in and pay off, whenever they may deem it proper to do so, the whole or any part of the bonded indebtedness of the city. The exercise of the power, though permissive merely in its terms, is a duty which these officers are bound to fulfill. *Mayor etc.* v. *Furze,* 3 Hill, 612; *Supervisors* v. *United States,* 4 Wall. 435, 18 L. Ed. 419. It is a power given to them as a trust, to be held and exercised for the benefit of the public, from time to time as occasion requires, and cannot be effectually abridged by their own acts. Dillon on Municipal Corporations, secs. 61, 62.''

In the case of *Provisional Municipality of Pensacola* v. *Lehman,* 57 Fed. 324, 332, 6 C. C. A. 349, the court, having quoted the statute involved, said: ''Further than this, we are inclined to the opinion that the act of 1887 is more than permissive. It is mandatory. The authorities go to the extent that when authority is given under a statute, whether by the word 'may,' or other permissive words, for an act to be done by a public officer, and it concerns the public interest, or is for the benefit of third persons, it is mandatory. There seems to be no doubt that if the words, 'and it shall appear equitable to said board that such conveyance should be made,' had been omitted from the first section of the statute, the statute would have been mandatory. Sutherland on Statutory Construction, secs. 461, 462, and cases cited; *Supervisors* v. *United States,* 4 Wall. 435, 18 L. Ed. 419. With those words in the statute, it would seem, under the authority of *Supervisors* v. *United States, supra,* that unless there

should be, in fact, equitable reasons against making such conveyance, the statute would still be mandatory. The true construction of the statute seems to be that thereby the incapacity of the vendor to sell and convey is entirely removed. The contracts of sale of public property therefore made are valid and enforceable, if otherwise than for want of power they would have been enforceable; that is, if, under equitable principles, the power being conceded, the vendee would be entitled to a specific performance. The words, 'and it shall appear equitable to said board,' can refer only to existing, well-defined equities, and ought not to be construed into vesting an arbitrary discretion in the municipality.''

In the case of *City of Little Rock* v. *United States ex rel. Howard*, 103 Fed. 418, 424, 43 C. C. A. 261, Sanborn, J., speaking for the circuit court of appeals of the eighth circuit in construing a statute conferring a power but not commanding its exercise, said: ''But counsel for the plaintiffs in error urge another objection to this *mandamus*. They argue that, if the city and its officers had the power to issue the warrants, there was no provision of the statute which declared that its officers should exercise that power, and that for this reason it was error for the court below to direct them to do so. A conclusive answer to this contention is found in the opinion of the supreme court in *Rock Island County Suprs.* v. *United States*, 4 Wall. 435, 446, 18 L. Ed. 423. . . . Where a municipality and its officers have the power to pay a judgment against the city by the issue to the owner of the judgment of · city warrants which are receivable for city taxes, and have no other way to pay it, it is their duty to issue warrants, and the writ of *mandamus* will be granted to compel them to discharge that duty. *Rock Island County Supervisors* v. *United States*, 4 Wall. 435, 446, 18 L. Ed. 423; *City of Galena* v. *Amy*, 5 Wall. 705, 709, 18 L. Ed. 560.''

In the case of the *Village of Kent* v. *United States ex rel. Dana*, 113 Fed. 232, 264, 51 C. C. A. 189, Day, J., for circuit court of appeals for the sixth circuit, said: ''We think it plain that the discretion vested in the council to determine the amount to be levied for each purpose does not apply to a purpose, such as the payment of interest, which is merely a matter of mathematical calculation, not required to be fixed by the exercise of discretion on the part of the council.

It is true, this section does not say the village shall levy a tax for this purpose; and it is argued that this statute is merely an enabling one, to permit the council to levy as much for this purpose as they shall see fit. But it is well settled in statutory interpretation that the word 'may' may be read 'shall.' . . . We therefore construe this section as though it read, 'The council shall levy a sum sufficient to pay the interest on the public debt to be applied for no other purpose.' We find nothing in the case cited by counsel for plaintiff in error (*United States* v. *Thomas*, 156 U. S. 358, 15 Sup. Ct. 378, 39 L. Ed. 450) that is in conflict with this view.''

In the case of *Windsor Coal Co.* v. *Chicago etc. Ry. Co.*, 52 Fed. 716, 719, the portion of an act under discussion was as follows: "When any such common carrier shall have established and published rates in compliance with the provisions of this act, the same, not being in excess of any statutory maximum rates now or that may hereafter be in force, it shall be unlawful for any such common carrier to charge, collect or receive a greater or less compensation, etc., than is specified in such published schedule. . . . It shall be the duty of the railroad commissioners to see that all schedules of rates adopted by common carriers are reasonable and just; *and they may, upon the complaint of any person, or upon their own motion without complaint, make inquiry from time to time, and determine whether the schedule of rates prepared and adopted by such common carrier is reasonable and just.*'' The court, after quoting the part of the statute we have quoted, said: "The word 'may' in the last clause of the above quotation should be construed to mean 'shall' on the settled rule of the construction of statutes that, where rights of third persons are involved, or the public good requires it, such term is to be regarded as mandatory. *Leavenworth St. D. M. R. Co.*, v. *Platte Co.*, 42 Mo. 171; *Steines* v. *Franklin Co.*, 48 Mo. 167, 8 Am. Dec. 87.''

In *In re The California*, Fed. Cas. No. 2313, 1 Saw. 596, the question involved was whether the words "may appoint a secretary," found in section 2 of the Organic Pilot Act, imposed a positive duty upon the board of pilot commissioners created by the act. *Held*, that this act, though permissive in terms, imposed an imperative duty upon the commissioners

to appoint a secretary. The words quoted are mandatory on account of public interest in the records required by the act to be kept.

In the case of *Hayes* v. *County of Los Angeles,* 99 Cal. 74, 79, 33 Pac. 766, the court said: "It is urged by respondent that the code, by providing that the board of supervisors *may* by order provide for refunding taxes, etc., paid more than once, made it optional with that body whether to do so or not, and that the board in this instance, having refused to refund, its action is conclusive upon the plaintiff. Where the public interest or private right requires that the thing should be done, then the word 'may' is generally construed to mean the same as 'shall.' (*People* v. *Supervisors,* 68 N. Y. 119.) Where the statute directs the doing of a thing for the sake of justice or the public good, the word 'may' is the same as the word 'shall.' (*Rex* v. *Barlow,* 2 Salk. 609.) Where a statute directs a thing to be done for justice's sake *may* means *shall.* (*Selvy* v. *United States,* 7 Court Cl. 334.) Where persons or the public have an interest in having the act done by a public body, *may* in such a statute means *must.* *Phelps* v. *Hawley,* 52 N. Y. 27; *People* v. *Supervisors,* 51 N. Y. 401. See *Estate of Ballentine,* 45 Cal. 698; *Supervisors* v. *United States,* 4 Wall. 436, 18 L. Ed. 419.

In the case of *State ex rel. Clark* v. *Board,* 6 Neb. 454, 461-463, it is said: "The 'act concerning counties and county officers' confers on the board the power to examine and settle all accounts of receipts and expenditures of the county, to allow all accounts chargeable against the county, 'and when so settled, county warrants *may* be issued therefor as provided by law.' In *King* v. *Inhabitants of Derby,* Skin. 370, the court held that *may* in the case of a public officer, is tantamount to *shall,* and if he does not do it, he shall be punished upon an information.' The rule is, that where power is given to public officers in the permissive form of language, 'whenever the public interests or individual rights call for its exercise,' it is peremptory. 'What they are empowered to do for a third person the law requires shall be done. It is placed with the depositary to meet the demands of right and prevent a failure of justice.' *Supervisors* v. *United States,* 4 Wall. 440, 18 L. Ed. 419, and cases cited. It was therefore the positive duty of the board to have issued this warrant when the

relator demanded the.same. And in the case at bar, it seems there can be no doubt as to the duty of the board, for in addition to the fund derived from the road tax, to be applied specially to the construction and repairing of bridges, section 15, chapter XLVII, Revised Statutes, entitled 'Roads,' provides that 'the county commissioners may levy an additional five mills on the dollar of the assessed value of all taxable property, to be levied and collected as other taxes,' the same to be exclusively applied to the building and repairing of permanent culverts and bridges. Although the language—*may levy*—is used in the permissive form, yet, whenever individual rights call for the exercise of the power conferred by law, it is imperative. In *King and Queen* v. *Barlow,* 2 Salk. 609, it is held that when a statute directs the doing of a thing for the sake of justice or the public good, the word *may* is the same as the word *shall.* See authorities before cited.''

In 20 Am. & Eng. Ency. of Law, 2d ed., p. 239, the rule is stated thus: ''The word 'may' in a statute will be construed to mean 'shall' or 'must' whenever the rights of the public or of third persons depend upon the exercise of the power to perform the duty to which it refers; and such is its meaning in all cases where the public interests and rights are concerned, or where a public duty is imposed upon public officers and the public or third persons have a claim *de jure* that the power shall be exercised. Or, as the rule is sometimes expressed, whenever a statute directs the doing of a thing for the sake of justice or the public good, the word 'may' will be read 'shall.' Where to give its ordinary meaning to 'may' would render the statutes in which the term is used a dead letter, an imperative meaning must be given to the word.''

Where the statute provides for the doing of an act for the sake of justice, or where it clothes a public body or an officer with power to do an act which concerns the public interests or rights of individuals, though the language of the statute is permissive merely, it will be construed as imperative, and the execution of the power may be insisted upon as a duty. *People* v. *Otsego Co. Suprs.,* 51 N. Y. 401; *Phelps* v. *Hawley,* 52 N. Y. 23; *Springfield Mill Co.* v. *Lane,* 5 Or. 265; *Ex parte Banks,* 28 Ala. 28.

The word ''may'' in a statute will be construed to mean ''must'' or ''shall'' when the rights of the public or third

persons depend upon the exercise of the power given or the performance of the duty to which it refers. *Kane* v. *Footh,* 70 Ill. 587; *Fowler* v. *Perkins,* 77 Ill. 271; *City of Cairo* v. *Campbell,* 116 Ill. 305, 5 N. E. 114, 8 N. E. 688; *Steines* v. *Franklin Co.,* 48 Mo. 167, 8 Am. Dec. 87; *State ex rel. Jones* v. *Laughlin,* 73 Mo. 443; *People* v. *Buffalo Co. Comrs.,* 4 Neb. 150; *Seiple* v. *Borough of Elizabeth,* 27 N. J. L. 407; *Cutler* v. *Howard,* 9 Wis. 309.

In Sutherland on Statutory Construction (secs. 460 to 462, inclusive) the doctrine announced by the foregoing cases which we have cited and from which we have quoted is stated, and the author says it is "supported by a preponderating weight of reason and authority."

Applying the principles of law settled by the foregoing authorities to the terms of the *quo warranto* statute of this territory, it is at once apparent that, though permissive in form, they are mandatory in fact. For they clothe a public officer—in this case the district attorney of Coconino County—with a power for the protection not only of public but also of individual rights. It is plain that unless this power had been given the public would have been without remedy in cases of the most flagrant usurpation of franchises, and individuals lawfully acquiring franchises are in the same predicament, though the franchises so acquired by them are rendered valueless because of the unlawful exercise of similar ones by others. The power is conferred for the benefit of the public and individuals, and not for that of the officers in whom it is vested. Clearly the statute is mandatory in its terms. Being mandatory, it imposed a duty upon defendant, and he neither exercised a discretion nor a judicial function when he refused to institute the proceedings requested by plaintiff, in view of the fact that such request was supported by a clear showing of usurpation of a franchise and an unlawful exercise of it.

*Other reasons why the terms of section 3794 of the Revised Statutes are mandatory.*

It is well settled that only the officer named in a statute authorizing *quo warranto* proceedings can bring and prosecute actions thereunder.

"*Quo warranto* should be prosecuted by the law officers who represent the sovereign from whom the franchise or office

originates, both at common law and in the United States. The proper officer to act in the United States is sometimes determined by analogy to the common law, in connection with the general powers of the law officers of the state, or by the laws under which the powers and duties of the prosecuting officers are defined generally." 17 Ency. of Plead. & Prac., p. 441.

Common law authorizes the *state's* attorney to prosecute *quo warranto* proceedings, but this may be changed by statute if the terms are clear. *State* v. *Keena,* 64 Conn. 215, 29 Atl. 470; *Commonwealth* v. *Allen,* 128 Mass. 310; *State* v. *Stein,* 13 Neb. 529, 14 N. W. 481; *Boyd* v. *Nebraska,* 143 U. S. 135, 12 Sup. Ct. 375, 36 L. Ed. 103.

"The district attorney or other proper prosecuting officer of the county represents the people in such proceedings [*quo warranto*] in the county or other inferior courts." 17 Ency. of Plead. & Prac., p. 442. See, also, on same point, *Territory of Nebraska* v. *Lockwood,* 3 Wall. 239, 18 L. Ed. 48; *State* v. *Seattle etc. Co.,* 28 Wash. 488, 68 Pac. 946 (948, 952), 70 Pac. 114; *State* v. *Cook,* 39 Or. 377, 65 Pac. 89; *Porter* v. *People,* 182 Ill. 516, 55 N. E. 349; *Haupt* v. *Rogers,* 170 Mass. 7, 48 N. E. 1080; *Wright* v. *Allen,* 2 Tex. 158.

Under the *quo warranto* statute of Arizona the power to institute such proceedings in a case like the one at bar is vested in the district attorney and no other person. This being true, it follows that unless the statute is mandatory in its terms—unless the district attorney can be compelled to exercise the power—he, in his discretion, has the right to institute such proceeding or not at his individual whim or caprice, regardless of the rights of the public or of how injuriously the rights of any citizen or citizens of the territory may be affected. Moreover, unless the terms of the statute are mandatory, it is entirely possible to render not only this law nugatory but also all the law of the territory relating to franchises, corporate or other, by the simple device of making it to the district attorney's personal interest to refrain from instituting *quo warranto* proceedings against any person or persons desiring to exercise a toll-road franchise or any other franchise provided for by the laws of this territory.

No construction which would permit such results was intended by the legislature or will be adopted by a court. In construing statutes, results of a construction should be kept

in view, and that construction which will secure the most beneficial results should be adopted.

In American and English Encyclopedia of Law, 2d ed., vol. 26, p. 649, it is said: "Where an act or word is susceptible of two meanings the court will give it such construction as will render the law effective and not nugatory." On the same point, see *Mack* v. *Prince*, 40 W. Va. 326, 21 S. E. 1012; *Whitney* v. *Ragsdale*, 53 Ind. 109.

In Sutherland on Statutory Construction (sec. 322) it is said: "In the consideration of the provisions of any statute, they ought to receive such a reasonable construction, if the words and subject-matter will admit of it, as that the existing rights of the public, or of individuals, be not infringed. Considerations of what is reasonable, convenient, or causes hardship or injustice, have a potent influence in many cases. It is always assumed that the legislature aims to promote convenience, to enact only what is reasonable and just. Therefore, when any suggested consideration necessarily involves a flagrant departure from this aim, it will not be adopted if any other is possible by which such pernicious consequences can be avoided."

In the same work (sec. 323) it is said: "A construction which must necessarily occasion great public and private mischief must never be preferred to a construction which will occasion neither, or not in so great a degree, unless the terms of the instrument absolutely require such preference. . . . A·statute may be construed contrary to its literal meaning, when a literal construction would result in an absurdity or inconsistency, and the words are susceptible of another construction which will carry out the manifest intention."

In the same work (sec. 324) it is said: "Statutes will be construed in the most beneficial way which their language will permit. To prevent absurdity, hardship, or injustice; to favor public convenience, and to oppose all prejudice to public interests."

In *In re Mitchell*, 120 Cal. 384, 386, 387, 52 Pac. 799, the court said: "It is argued that a court should resolutely shut its eyes to consequences, and give no heed to the ruinous results of a statute. But that is so only where such results follow necessarily from clear and explicit language in the statutes; where it is fairly susceptible of two constructions,

one leading inevitably to mischief or absurdity, and the other consistent with justice, sound sense, and wise policy, the former should be adopted. This principle is as old as American and English jurisprudence, is stated in text-books on the subject, and has been declared by this court. (*Burnham* v. *Hayes,* 3 Cal. 119, 58 Am. Dec. 389; *People* v. *Turner,* 39 Cal. 379; *Cullerton* v. *Meade,* 22 Cal. 98, 99; *Jacobs* v. *Supervisors,* 100 Cal. 127, 34 Pac. 630; Sedgwick on Statutory and Constitutional Law, 312; Endlich on Interpretation of Statutes, secs. 258, 264-266.) Where the language of a statute is clear, and leaves no doubt as to the legislative intent, there is no room for interpretation, and judicial discretion cannot break its force, however disastrous the consequences may be; but the rule, as stated by Sedgwick, is that 'Where the judge has an admitted and necessary discretion, considerations of policy and wisdom, hardship, and inconvenience become as indispensable as they are out of place when the matter has been definitely decided by the legislature.' (Sedgwick on Statutory and Constitutional Law, 312.)''

This court has decided that the terms of section 3794 of the Revised Statutes are mandatory when a showing is made to the district attorney from which he could reasonably conclude that the usurpation of a franchise exists. See decision on demurrer in *Buggeln* v. *Doe,* 8 Ariz. 341. In the decision of this court referred to it is said: "It is, however, his [the district attorney's] duty to bring such proceedings, when facts are laid before him from which he can reasonably conclude that such franchise is being usurped. If on such showing he fails to institute such proceedings, his action can be reviewed upon an application for *mandamus;* and where, upon such application, it appears to the court that such a showing has been made to the district attorney, from which he could reasonably conclude that such franchise had been usurped, a writ of *mandamus* will issue to compel the institution by such district attorney of a proper proceeding in the nature of *quo warranto.*"

We have shown that this court's decision above quoted is abundantly sustained by the authorities, and, as defendant has shown no reason for a departure from it, the court should adhere to its former ruling. The demurrer should be overruled, for when it is shown to the district attorney that certain

persons named are exercising a franchise to collect toll, in the absence of even a pretense of a compliance with the laws of this territory granting such franchises, and after having completely abandoned by deed any shadow of right to such franchise they might have had, and that showing is supported by his oath, as was done by plaintiff in this case, according to the allegations of the petition here (conceded to be true), it certainly "appears to the court that such a showing has been made to the district attorney from which he could reasonably conclude that such franchise had been usurped." Indeed, not only could he "reasonably" so conclude, but he could so conclude with certainty, unless he were, for some reason, biased or prejudiced in favor of the persons against whom it was desired that such proceedings be instituted.

E. M. Doe, for Respondent.

THE COURT.—An application has been made to this court by the plaintiff for a peremptory writ of *mandamus* to compel the defendant to institute *quo warranto* proceedings against C. H. McClure et al., who, it is claimed, are usurping and unlawfully exercising a certain franchise. There is an answer by the defendant setting up several defenses, and also a replication thereto by the plaintiff. The court is of the opinion that the plaintiff's demurrer to the defendant's plea in abatement is well taken, and therefore sustains the same.

Upon the question of the sufficiency of the petition, raised by the defendant's demurrer, a majority of the court is of the opinion that the facts stated are insufficient in law to entitle the plaintiff to the writ prayed for. Since it is only mandatory upon the district attorney to institute such an action "when he has reason to believe that an office or franchise is being usurped, intruded into, or unlawfully held or exercised," facts must be alleged to clearly show that his refusal has been an arbitrary act, and not a mistake of judgment. It is not enough to allege that certain facts were presented to the district attorney by the plaintiff in connection with the request to institute the proceedings, because the official may have derived knowledge, from investigation, which would amply justify a refusal to act. It should be alleged or made to affirmatively appear in the complaint that, from all

the facts before him at the time of his refusal, the defendant had reason to believe that the franchise was being usurped. There should be enough alleged to negative the exercise of an honest discretion.

The demurrer to the petition in its present form will be sustained with leave to plaintiff to amend within twenty days.

KENT, C. J.—I dissent. I think the petition is sufficient, and that the demurrer of the defendant should be overruled.